IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RON PETERSON FIREARMS, LLC,

        Plaintiff,

    v.                                    CIVIL NO. 11-CV-678 JC/LFG
                                              (consolidated with 12-CV-167)
B. TODD JONES, ACTING DIRECTOR,
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS & EXPLOSIVES,

        Defendant.

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

On February 27, 2012, Defendant filed the certified administrative record in this case. See Doc. No. 36. This filing included an agency certification that the record filed with the Court "constitute[s] a true and complete copy of all non-privileged materials that constitute the agency administrative record." Certification of Admin. Record [Doc. No. 36-1]. Consistent with this certification, Defendant redacted certain information that Congress has expressly prohibited from disclosure, consisting of the names and identifying information of federal firearms licensees ("FFLs") from whom information was sought in the course of a firearms trace by law enforcement officials. As explained below, Congress has expressly prohibited the disclosure of such information in the course of civil litigation. Despite this prohibition, Plaintiffs Dale Rutherford, doing business as The Cop Shop, and Tracy Rifle & Pistol, Inc. ("Plaintiffs") have moved this Court to order Defendant to produce this privileged and confidential information that has been redacted in the administrative record. However, Plaintiffs fail to demonstrate any need for the redacted information or to overcome the presumption of regularity accorded to an

agency's designation of the administrative record.  Nor do Plaintiffs take any account of the reasons that prompted Congress to preclude such information from disclosure, including the privacy concerns of businesses licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Moreover, the administrative record, as redacted, provides sufficient information to inform both the Court and Plaintiffs of the relevant decision made by Defendant and obviates the need for Plaintiffs to obtain additional information in order to litigate this case.  Accordingly, the Court should deny Plaintiffs' motion.

## ARGUMENT

**I.  Federal Law Expressly Prohibits the Disclosure of the Confidential Business Information Sought by Plaintiffs.**

In cases involving review under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), information that is prohibited from disclosure in civil litigation does not constitute part of the administrative record.[1]  Courts have repeatedly held that agencies may exclude or redact from an administrative record confidential or sensitive information, particularly where, as here, federal law expressly prohibits the redacted information from disclosure.  See, e.g., MD Pharm., Inc. v. DEA, 133 F.3d 8, 13-15 (D.C. Cir. 1998) (party challenging agency's decision to issue

---

[1] "A complete administrative record . . . does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege."  Tafas v. Dudas, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008); see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 13 (D.D.C. 2001) ("[D]eliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record."); Checkosky v. SEC, 23 F.3d 452, 489 (D.C. Cir. 1994) ("In passing on final agency action, we . . . have refused to consider transcripts of closed agency meetings or intra-agency memoranda and documents recording the deliberative process leading to the agency's decision.") (citations and quotations omitted), *superseded on other grounds as recognized by* Marrie v. SEC, 374 F.3d 1196 (D.C. Cir. 2004); Norris & Hirshberg, Inc. v. SEC, 163 F.2d 689, 693 (D.C. Cir. 1947) ("[I]nternal memoranda made during the decisional process . . . are never included in a record.").

license to another firm was not entitled to complete access to all information considered by the agency in light of regulations prohibiting disclosure of "[a]ny confidential or trade secret information disclosed in conjunction with [a licensing] application"); Nat'l Wildlife Fed. v. EPA, 286 F.3d 554, 574 (D.C. Cir. 2002) (disclosure in the administrative record of confidential business information ("CBI") collected by the agency was not required where the "CBI sought was the type of sensitive information and confidential or trade secret information that EPA can properly withhold from public view") (internal punctuation omitted).  Moreover, "designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity.  The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy, 485 F.3d 1091, 1097 (10th Cir. 2007) (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993)).

Plaintiffs seek disclosure of the "identities of the federally-licensed retail sellers who sold rifles that were later recovered in Mexico from 2008 to 2010," based on "queries made by ATF of its Firearms Tracing System database."  Pl. Br. in Supp. of Mot. to Supplement Admin. Record ("Pl. Br.") at 3 [Doc. No. 41].  However, a federal statute prohibits the disclosure of ATF trace data, including the information sought by Plaintiffs in this case, except for narrowly-defined law enforcement or national security purposes.

Each year since 2003, Congress has included in annual appropriations legislation strict prohibitions on ATF's use of federal funds to disclose information contained in its trace databases.  The most recent enactment of this restriction provides:

> *Provided further*, That, during the current fiscal year and in each fiscal year thereafter, **no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section**, except to: (1) a Federal, State, local, or tribal law enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data; **and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court** or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding; **except that this proviso shall not be construed to prevent:** (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or **statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations**:

Pub. L. No. 112-55, 125 Stat. 552, 609-10 (Nov. 18, 2011) (emphasis added).

The information sought by Plaintiffs – the identities of FFLs who sold firearms that were later recovered in Mexico and successfully traced – is clearly "part . . . of the contents of the Firearms Trace System database," the disclosure of which is expressly prohibited by this

legislation.[2] Identifying information for the FFLs who sold firearms later recovered in Mexico and successfully traced is information maintained by ATF in its trace database. See Decl. of Charles J. Houser ¶¶ 1-6 (attached as Ex. 1). This information is used, along with other similar data, to assist ATF in detecting patterns in the sources of firearms used in crimes. See id. ¶ 8; see also generally ATF National Tracing Center Division: Information for Law Enforcement Agencies (explaining that tracing of firearms recovered by law enforcement officials is used, among other purposes, to detect patterns in the sources and kinds of crime guns).[3]

Revealing in a publicly-filed Administrative Record the identities of FFLs who sold firearms later recovered in Mexico and successfully traced could implicate privacy concerns of private businesses and jeopardize pending criminal investigations – some of the precise concerns Congress sought to address. See Houser Decl. ¶¶ 9-10. As explained in the House Report for the 2005 Appropriations Act:

> In the last two fiscal years the Committee has expressed serious concern that, contrary to provisions of the Gun Control Act, as amended, and Congress' intent, *certain sensitive law enforcement information contained in databases maintained by the ATF* have been subject to release under the Freedom of Information Act and through court action to the public, including civil litigants, firearm manufacturers and distributors, public interest groups and governmental entities, for use other than in bona fide criminal investigations and prosecutions. The Committee concern is not related to budgetary considerations. The intent has been to enforce existing Federal law limiting disclosure of this sensitive law enforcement information solely to law enforcement, and, to the extent current Federal law does not already so restrict disclosure to so provide now. It is of great concern that releases have occurred, and if repeated, may result in wide-spread

---

[2] By contrast, the unredacted information that was included in the Administrative Record (indicating the number of firearms recovered from FFLs in particular states, without revealing the identities of those FFLs) constitutes "statistical aggregate data regarding firearms traffickers and trafficking channels," 125 Stat. at 610, the disclosure of which is permitted by the statute.

[3] *Available at* http://www.atf.gov/publications/download/p/atf-p-3312-7.pdf.

> disclosure of this information to the public at large. This holds the potential of endangering law enforcement officers and witnesses, jeopardizing on-going criminal investigations and homeland security. The need to maintain these sensitive law enforcement databases on a restricted, confidential basis in accordance with the law and ATF disclosure practices in place for years derives from the sensitive and long-term nature of criminal investigations. In addition, such information, once released, might easily be disseminated through the Internet. *This would endanger law enforcement and homeland security, and violate the privacy of innocent citizens and businesses.*

H.R. Rep. 108-576, at 30 (2004) (emphasis added).

As the United States Court of Appeals for the Seventh Circuit has explained in construing a previous iteration of this provision, this stringent disclosure restriction "deprives ATF of any discretion to act on the matter." City of Chicago v. Dep't of Treasury, 423 F.3d 777, 781-82 (7th Cir. 2005). "Congress' obvious intention . . . was to cut off access to the databases for any reason not related to law enforcement." Id. at 780. "The public is now doubly restricted from access to these databases: first, the funding restriction prevents the federal agency that collects the data from acting on a request for disclosure; and second, the requesting party has no judicial remedy as the information is immune from legal process and not subject to subpoena or otherwise discoverable in a civil action." Id.

Accordingly, in preparing the Administrative Record, Defendant redacted the names and identifying information of FFLs who sold firearms that were later recovered in Mexico and successfully traced because it constitutes information "maintained by" ATF in its trace database, which Congress has expressly prohibited from disclosure in civil litigation. Congress has made clear that data such as the redacted information "shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based

on the data, in a civil action in any State (including the District of Columbia) or Federal court." 125 Stat. at 610.  The redacted information at issue is thus exempt from disclosure.[4]

In sum, Congress has expressly prohibited the release of the information sought by Plaintiffs.  Therefore, and as explained below, Plaintiffs have failed to show that they are entitled to supplementation of the Administrative Record.[5]

---

[4] Additionally, the information is exempt from disclosure under Exemption 7 of the Freedom of Information Act, 5 U.S.C. § 552(b)(7).  That exemption permits an agency to withhold certain "information compiled for law enforcement purposes," including information the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  As noted above, Congress has stated that the trace information at issue "once released, might easily be disseminated through the Internet[, which] would endanger law enforcement and homeland security, and violate the privacy of innocent citizens and businesses." H.R. Rep. 108-576, at 30 (2004).  Moreover, because some FFLs are individuals rather than corporate entities, the disclosure of their names and identifying information in a system of records maintained by an agency may be protected by the Privacy Act, 5 U.S.C. § 552a.

[5] Plaintiffs' brief states that "Defendant has not provided a basis for the redactions in a privilege log or otherwise."  Pl. Br. at 3.  Contrary to Plaintiffs' assumption, because documents exempted from disclosure are not part of the administrative record in the first instance, they need not be logged as "withheld" from an administrative record.  See Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Serv., 631 F. Supp. 2d 23, 27-28 (D.D.C. 2009) (denying motion to compel defendants to produce a privilege log of any privileged documents because such documents "are not part of the administrative record to begin with"); Blue Ocean Inst. v. Gutierrez, 503 F. Supp. 2d 366, 372 n.4 (D.D.C. 2007) ("[I]t is unfair [for plaintiff] to criticize [the agency] for not claiming a privilege and filing a privilege log as to documents that [the agency] claims should not be in the administrative record in the first place.").  Federal Rule of Civil Procedure 26(b)(5) is not to the contrary because it is a *discovery* rule that does not apply in APA record review cases like this one.  Under Rule 26(b)(5), "[w]hen a party withholds information *otherwise discoverable* by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed . . ."  Fed. R. Civ. P. 26(b)(5) (emphasis added).  The redacted information that Plaintiffs seek to compel Defendant to log is not "otherwise discoverable."  Indeed, no documents are "discoverable" in this case because the Federal Rules carve out from the mandatory requirement of initial disclosures "action[s] for review on an administrative record[.]"  Fed. R. Civ. P. 26(a)(1)(B)(i).

## II.     The Congressional Prohibition Does Not Authorize Submission of the Data in Question Under the Terms of a Protective Order.

In its motion, Plaintiffs correctly note that Defendant "further objects to filing unredacted copies of the documents under the terms of a protective order." Pl. Mot. to Supplement Admin. Record at 1 [Doc. No. 40]. Plaintiffs' alternative proposal for production of this information pursuant to a protective order ignores the fact that Congress' prohibition against disclosure of the contents of ATF's Firearms Trace System database lacks any provision allowing for the waiver of that prohibition. Instead, Congress provided unequivocally that "all such data shall be *immune from legal process*, shall not be subject to subpoena or other discovery, *shall be inadmissible in evidence*, and *shall not be used, relied on, or disclosed in any manner*, nor shall testimony or other evidence be permitted based on the data, *in a civil action in any State* (including the District of Columbia) *or Federal court*." 125 Stat. at 610 (emphasis added).

Accordingly, unlike information protected by the Privacy Act, 5 U.S.C. § 552a, for instance, Congress's prohibition against disclosure of the contents of ATF's Firearms Trace System database contains no waiver for the provision of such contents subject to a protective order. Cf. Serono Labs. v. Shalala, 35 F. Supp. 2d 1, 3-4 (D.D.C. 1999) (drug company whose FDA application was challenged by another company was "perfectly correct in *insisting that the agency in this case must purge the administrative record* of [the company's] trade secrets before it files the administrative record for review by any one else and that a *protective order* restricting access to those secrets *cannot excuse the FDA from fulfilling its statutory obligation* to protect [those] trade secrets. Simply put, the protective order cannot relieve FDA from a statutory obligation it has to [the company] and permit it to abrogate a statutory right [the company] can

assert.") (emphasis added).[6]

The appropriations provision prohibits disclosure of the contents of ATF's Firearms Trace System database under any circumstances. As the Seventh Circuit has explained, that court had previously concluded that a prior iteration of the appropriations rider that lacked the "immune from legal process" language "did not specifically exempt the databases from disclosure; they merely prohibited the use of appropriated funds to disclose the information." City of Chicago, 423 F.3d at 782. In the 2005 Act, Congress included this language in order to "tak[e] away any possible judicial remedy for discovery of the information." Id. "The only reasonable explanation for Congress' action is that it intended to preclude disclosure of the information." Id. Thus, protection of the redacted information is not permitted even under a protective order.[7]

---

[6] In any event, the two plaintiffs bringing this motion (Dale Rutherford, doing business as The Cop Shop, and Tracy Rifle & Pistol, Inc.) are not simply demanding information about themselves. Instead, they are demanding production of the names and identifying information of *all* FFLs who sold rifles recovered in Mexico between 2008 and 2010 and successfully traced based on queries made by ATF in its Firearms Trace System database. See Pl. Br. at 7 (seeking an order requiring Defendant to file a supplemental administrative record in which *all* "redactions made to the firearms trace data summaries are removed – AR 406 through 547"). Thus, even if Congress had provided for waiver of the prohibition against production of such data – which it did not – Plaintiffs could not waive this prohibition as applied to *all* FFLs who sold rifles later recovered in Mexico and successfully traced.

[7] Nor does Int'l Longshoreman's Ass'n ("ILA") v. Nat'l Mediation Bd., 2006 WL 197461 (D.D.C. Jan. 26, 2006), cited by Plaintiffs, undermine this conclusion. In that case, the administrative record filed by the agency did not include handwritten notes taken by agency officials during the investigation preceding the decision under review, and the agency redacted the names and titles of investigative witnesses that appeared in witness statements. Id. at *2. The agency asserted that the handwritten notes were protected by the deliberative process privilege but did not file the supporting affidavit required to invoke that privilege, and the court instructed the agency to resubmit its dispositive motion together with the necessary support to invoke the deliberative process privilege. Id. at *4. The agency also stated that it had redacted the names and titles of investigative witnesses "to protect the confidentiality of the witnesses,"

### III. Plaintiffs Fail to Rebut the Presumption That the Agency Properly Designated the Administrative Record.

Even without the congressional preclusion of information contained in ATF's Firearms Trace System database, Plaintiffs would have failed to make the showing necessary to permit supplementation of the record: "The circumstances which warrant consideration of extra-record materials are 'extremely limited.'" Custer Cty. Action Ass'n v. Garvey, 256 F.3d 1024, 1028 n.1 (10th Cir. 2001) (quoting Am. Mining Cong. v. Thomas, 772 F.2d 617, 626 (10th Cir. 1985)). This is in part because:

> [J]udicial reliance on an agency's stated rationale and findings is central to a harmonious relationship between agency and court, one which recognizes that the agency and not the court is the principal decision-maker. Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President. Therefore, absent clear evidence to the contrary, *an agency is entitled to a strong presumption of regularity*, that it *properly designated the administrative record*.

Pac. Shores Subdivision, Ca. Water Dist. v. U.S. Army Corp. of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal citations omitted) (emphasis added). In fact, supplementation of the record should only be permitted: (1) when the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient

---

id. at *4 n.4, but the decision does not suggest that the redacted information was legally prohibited from disclosure. The court suggested that a protective order or an ex parte submission of the witnesses' names and titles would sufficiently protect their confidentiality, and stated that if the agency did not provide an adequate legal basis for withholding the information, the court would view the redacted information in the light most favorable to the plaintiff. Id. Here, the deliberative process privilege is not at issue, so no agency declaration is required. Additionally, unlike the redacted information at issue in ILA, Congress has expressly prohibited the disclosure of the contents of ATF's Firearms Trace System database. As explained above, neither the submission of such contents under the terms of protective order nor an ex parte submission to the Court is permitted in light of Congress's directive that "all such data . . . shall not be used, relied on, or disclosed in any manner . . . in a civil action in . . . Federal court."

because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; or (5) evidence coming into existence after the agency action demonstrates that the action was right or wrong. Custer Cty. Action Ass'n, 256 F.3d at 1028 n.1 (citing Am. Mining Cong., 772 F.2d at 626). In addition, because of the presumption of administrative regularity, it is the moving party that must first rebut this presumption and then show that supplementation of the record is warranted. See Citizens for Alternatives to Radioactive Dumping, 485 F.3d at 1097 ("The court assumes the agency properly designated the Administrative Record absent *clear evidence* to the contrary.") (emphasis added) (citation omitted).

Plaintiffs neither show that supplementation is warranted here nor provide clear evidence sufficient to rebut the presumption that Defendant has properly designated the administrative record. As an initial matter, Plaintiffs have alleged that neither The Cop Shop nor Tracy Rifle & Pistol, Inc. "has received a trace request regarding the type of rifle that is subject to the new reporting requirement." Pl. Br. at 5. But even assuming *arguendo* that this allegation is true, Plaintiffs have not explained why information revealing whether they sold semi-automatic rifles that were recovered in Mexico and successfully traced or about the identities of *other* FFLs who have sold semi-automatic rifles that were recovered in Mexico and successfully traced is relevant to the inquiry before this Court: namely, whether ATF acted reasonably in requiring Type 01 and Type 02 FFLs[8] in the four States immediately bordering Mexico to submit a one-page multiple

---

[8] Federal firearms licensees fall into various categories including: dealers in firearms other than destructive devices (Type 01); pawnbrokers in firearms other than destructive devices (Type 02); manufacturers in ammunition for firearms (Type 06); manufacturers of firearms other

sales report whenever they make a qualifying sale of two or more semi-automatic rifles.

In any event, Plaintiffs fail to show that any of the circumstances warranting supplementation of the Administrative Record are found here.  See Custer Cty. Action Ass'n, 256 F.3d at 1028 n.1.  Plaintiffs do not show that Defendant's decision is inadequately explained and cannot be reviewed properly without considering the information they seek, nor that the record is deficient or that the agency considered factors left out of the formal record.  Nor is this case so complex and the record so unclear that the Court will be unable to understand the issues without this information.  A review of the administrative record readily demonstrates that ATF's focus in analyzing its trace data was on the States in which the dealers who sold firearms later traced were located, rather than on the individual identities of those FFLs.  See Administrative Record ("A.R.") at 206-208, 220-221, 227-235, 406-552, 609-611, 633, 674-675, 718, 722-731.  Plaintiffs' argument that "[t]he redacted information is directly probative of whether ATF had a reasoned basis to conclude that [multiple] sales reports from the plaintiffs would assist ATF investigations into illegal firearms trafficking into Mexico," Pl. Br. at 2, proceeds on a mistaken premise.  Plaintiffs appear to assume that multiple sales reports that they submit to ATF could assist the agency's investigations *only* if a qualifying rifle sold by Plaintiffs had later been recovered in Mexico and successfully traced.  In other words, Plaintiffs contend that, unless they were among the FFLs to whom one or more qualifying rifles have already been traced, Defendant's multiple sales reporting requirement is not reasonable.  Because Plaintiffs' premise

---

than destructive devices (Type 07); importers of firearms other than destructive devices (Type 08); dealers in destructive devices (Type 09); manufacturers in destructive devices (Type 10); and importers in destructive devices (Type 11).  ATF's regulations provide particulars about the records to be kept by each licensee category.  See, e.g., 27 C.F.R. §§ 478.124(c)(1) & (e), 478.125(e).

is incorrect, their argument fails.

The relevant claim by Plaintiffs is that ATF's issuance of the challenged demand letters was arbitrary and capricious in violation of the APA. The APA requires a reviewing court to uphold an agency action unless that action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is deemed arbitrary and capricious "if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The scope of review under the "arbitrary or capricious" standard is narrow, and the reviewing court may not substitute its judgment for that of the agency. MacKay v. Drug Enforcement Admin., 664 F.3d 808, (10th Cir. 2011) (citations omitted). To uphold an agency decision under this standard, the reviewing court must only satisfy itself that the agency "examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts and the decision made." Id. (citations omitted). "If [the court is] so convinced, [the] decision must stand." Id.

Plaintiffs contend that without the redacted information, "[t]here is no way for the Court to determine whether ATF had information indicating that The Cop Shop or Tracy Rifle had any involvement with rifles recovered in Mexico and were for that reason included among those sellers whose reports might conceivably assist ATF in its investigative efforts." Pl. Br. at 6. But such a determination is not relevant to the Court's review of ATF's decision. Nothing in the APA requires ATF to limit multiple sales reporting to FFLs who can be definitively tied to one or

-13-

more rifles recovered in Mexico and successfully traced to a specific FFL. As explained in another decision involving ATF demand letters, under well-established principles of APA review, "[w]hen it comes to particular line-drawing decisions made in the course of setting policy, an agency 'is not required to identify the optimal threshold with pinpoint precision. It is only required to identify the standard and explain its relationship to the underlying regulatory concerns.'" Blaustein & Reich, Inc. v. Buckles, 220 F. Supp. 2d 535, 547 (E.D. Va. 2002), aff'd, 365 F.3d 281 (4th Cir. 2004) (quoting WorldCom, Inc. v. FCC, 238 F.3d 449, 461-62 (D.C. Cir. 2001)); see also Sinclair Broadcast Group, Inc. v. FCC, 284 F.3d 148, 159 (D.C. Cir. 2002) ("Where issues involve 'elusive' and 'not easily defined' areas . . . [judicial] review is considerably more deferential, according broad leeway to the Commission's line-drawing determinations.").

Thus, whether or not ATF *could* have limited its collection to a narrower class of FFLs in the Southwest Border States – namely, FFLs that sold firearms later recovered in Mexico and successfully traced – is irrelevant to the Court's review of the reasonableness of the agency's decision under the APA. Even assuming *arguendo* that Plaintiffs were able to demonstrate that they are not among this class of FFLs, such a demonstration would not undermine the reasonableness of the agency's decision.

As Defendant will explain in its merits brief, multiple sales reports of handguns enable ATF investigators to quickly identify the purchaser of a "crime gun" without having to contact every entity in the firearm's distribution chain to complete a trace. A.R. at 60-61, 286. ATF also uses multiple sales reports to verify gun dealers' records, to detect unlawful activity, and to generate investigative leads regarding straw purchasers and trafficking patterns. A.R. at 285.

Multiple sales reports have proven useful because the purchase of "a large number of the same model of firearm, or similar firearms" at one time is a "key indicator" of firearms trafficking. A.R. at 30; see also A.R. at 63 ("[I]nformation ATF received from FFLs on multiple sales has provided critical leads for some investigations of arms trafficking to Mexico."); A.R. at 74 ("Multiple sales . . . have been cited in prior ATF reports and by ATF officials as sources or indicators for firearms trafficking in general and to Mexico in particular."). In many cases, "the most useful intelligence for detecting firearms trafficking is information on the gun purchasers themselves – including the number and types of guns bought, the age and gender of the buyers, and background information indicating whether the buyers had the financial means to buy the guns." A.R. at 285.

"Due to the difficulty in detecting gun trafficking into Mexico, knowing that traffickers are using high-powered long guns with increasing frequency, and knowing that multiple gun sales are strong indicators of illegal trafficking, ATF determined that it would be helpful to obtain information on multiple sales of long guns and maintain this information in a searchable database." Nat'l Shooting Sports Found. ("NSSF") v. Jones, __ F. Supp. 2d __, 2012 WL 112206, at *4 (D.D.C. Jan. 13, 2012). ATF's 37 years of experience using multiple sales reports for handguns strongly suggested that the data generated from multiple sales reports for semi-automatic rifles greater than .22 caliber and capable of accepting detachable magazines would be similarly useful. Because these types of rifles are increasingly being used by Mexican drug cartels, multiple sales reports of such rifles will better enable law enforcement to identify suspected firearms traffickers more quickly. See A.R. at 60, 61. In turn, more rapid identification will increase the likelihood of law enforcement being able to intercept the firearms

traffickers' operations *before* these purchased rifles cross the border. Records of multiple sales may also assist prosecutors in proving that an individual intentionally bought a firearm to transport it to Mexico. A.R. at 194-202, 634-646.[9]

In sum, "ATF determined that certain powerful long guns are weapons of choice of Mexican drug cartels, and that multiple sales of such guns is a strong indicator of gun trafficking." NSSF, 2012 WL 112206, at *11. The agency "also determined that '[b]ecause long guns have become Mexican cartels' weapons of choice, multiple sales reporting [of handguns] has become less viable as a source of intelligence to disrupt the illegal flow of weapons to Mexico.'" Id. (quoting A.R. at 285).[10] Additionally, "[b]ecause the states bordering Mexico have been shown to be major sources of guns related to crime in Mexico, the Demand Letter

---

[9] In addition, these reports are expected to provide timely intelligence on secondhand sales of the specified rifles, which are commonly trafficked to Mexico. A.R. at 61. "Secondhand guns are weapons originally acquired from FFLs by retail buyers and then resold." NSSF, 2012 WL 112206, at *7; see also A.R. at 61. Through the firearms tracing process, ATF can follow the records of a firearm from the manufacturer or importer to the first retail sale by an FFL; however, if the firearm was resold from one unlicensed individual to another (or through a pawnshop), there is a break in the chain of records, and ATF must consult the last recorded purchaser of the firearm to determine its continuing disposition. A.R. at 61. As a result, "while ATF may be able to trace a firearm to the first retail purchaser, it generally has no knowledge of any secondhand firearms purchases from gun shows or pawnshops – where many traffickers buy guns – without conducting further investigation, which may require significant additional resources and time." NSSF, 2012 WL 112206, at *7 n.7 (quoting A.R. at 61-62). Such investigations "are so time-consuming and often unproductive that the Bureau rarely performs an investigative trace of a secondhand firearm." Blaustein & Reich, Inc. v. Buckles, 365 F.3d 281, 284 (4th Cir. 2004). And although federal law requires FFLs to maintain records of secondhand firearms that they receive or sell, 27 C.F.R. § 478.125(e), this information "is difficult for the Bureau to access, because once the initial chain of distribution among FFLs is broken, the Bureau does not typically know which FFL dealer received or sold a particular secondhand firearm without conducting an investigative trace." Blaustein & Reich, 365 F.3d at 285.

[10] The Administrative Record filed in NSSF is identical to the Administrative Record filed in the present case.

targets FFLs located in those states." Id.

Consequently, even assuming *arguendo* that Plaintiffs were able to demonstrate that they are not among the FFLs in the four Southwest Border States that sold firearms later recovered in Mexico and successfully traced, such a demonstration would not undermine the reasonableness of the agency's decision. The premise that Defendant's reporting requirement would not be reasonable unless it were limited solely to such FFLs fails to take into account ATF's efforts to develop intelligence on straw purchasers and broader trafficking networks, and to make it more difficult for criminals to traffic weapons across the border. In fact, in comments submitted to ATF, the National Shooting Sports Foundation – which is pursuing a lawsuit asserting claims legally identical to Plaintiffs' claims – has acknowledged that traffickers could easily vary the dealers from whom they purchase firearms in order to avoid detection by ATF. A.R. at 700. Thus, if ATF had limited the reporting requirement to the dealers in the Border States who have already sold firearms recovered in Mexico and successfully traced, straw purchasers could simply avoid purchasing firearms from those specific dealers. Such a limited reporting requirement would also undermine law enforcement efforts to obtain a complete picture of the trafficking patterns in the Southwest Border region.

Moreover, as traffickers shifted their behavior to frequent different FFLs – as predicted by the National Shooting Sports Foundation – ATF would constantly need to adjust the FFLs subject to the reporting requirement, making administration and enforcement of the requirement unnecessarily difficult. Under the approach adopted by the agency, however, ATF can more easily identify straw purchasers who maintain a pattern of buying semiautomatic rifles in smaller quantities from a number of FFLs within the Southwest Border region. See A.R. at 565-566;

614-626 (providing anecdotal evidence as to how multiple sales reports assisted ATF in identifying straw purchasers after they had purchased a number of handguns from different FFLs in certain States).[11]  In addition, as explained above, these reports are expected to provide timely intelligence on the secondhand sales of the specified rifles.  See supra page 16 n.9.

    At bottom, then, regardless of which FFLs in the four Southwest Border States sold qualifying rifles later recovered in Mexico and successfully traced, it was reasonable for Defendant to conclude that sending demand letters only to these FFLs would simply allow traffickers to avoid those particular FFLs subject to the reporting requirement.  Thus, whether Plaintiffs are or are not among these FFLs is simply not relevant to the issue raised by Plaintiffs' APA claim: that is, whether the agency's determination was reasonable.  Accordingly, even if the redacted information were to show that Plaintiffs were not among the FFLs from whom trace data was sought, that circumstance would not warrant supplementation of the Administrative Record.  The absence of such information does not result in an inadequate explanation of the agency's decision or prevent proper judicial review, nor is this case so complex or the record so unclear that the Court needs the redacted information to enable it to understand the issues.  The agency has filed a 779-page Administrative Record with the Court containing all non-privileged factual information that relates to the decision at issue.  As the Court can confirm by looking at the record, the vast majority of its pages remain unredacted.  The record is not deficient without the information sought by Plaintiffs, and Plaintiffs have neither shown that the agency considered

---

[11] Additionally, it was rational for ATF to collect this information on a statewide basis because the Gun Control Act of 1968 uses State boundaries as important legal dividing lines. See, e.g., 18 U.S.C. §§ 922(a)(3), (a)(5), 922(b)(3); see also United States v. Biswell, 406 U.S. 311, 315 (1972) (Gun Control Act was enacted "to prevent violent crime *and to assist the States in regulating the firearms traffic within their borders*") (emphasis added).

factors that were left out of the formal record nor that pertinent information only came into existence after the agency's decision. See Custer Cty. Action Ass'n, 256 F.3d at 1028 n.1. Thus – even setting aside the express congressional prohibition against the disclosure of the redacted information – Plaintiffs have failed to show that supplementation of the record is warranted.[12]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to supplement the administrative record should be denied.

Dated: March 30, 2012                                       Respectfully submitted,

                                                             STUART F. DELERY
                                                             Acting Assistant Attorney General

                                                             KENNETH J. GONZALES
                                                             United States Attorney

                                                             JAN ELIZABETH MITCHELL
                                                             Assistant U. S. Attorney
                                                             P.O. Box 607
                                                             Albuquerque, NM 87103
                                                             505-346-7274
                                                             Jan.Mitchell@usdoj.gov

                                                                  /s/ Daniel Riess
                                                             SANDRA M. SCHRAIBMAN
                                                             Assistant Director
                                                             DANIEL RIESS
                                                             LESLEY FARBY
                                                             Trial Attorneys
                                                             U.S. Department of Justice

---

[12] The district court in NSSF specifically rejected a claim by a plaintiff that the Administrative Record was not sufficient and thus warranted supplementation. See NSSF v. Jones, Order dated Sept. 28, 2011 (finding that plaintiff "has not shown that the record is insufficient" and denying motion for discovery to supplement the record) (attached as Ex. 2). As noted above, see supra page 16 n.10, the Administrative Record filed in NSSF is identical to the Administrative Record filed in the present case.

                Civil Division, Rm. 6122
                20 Massachusetts Avenue, NW
                Washington, D.C. 20530
                Telephone: (202) 353-3098
                Fax: (202) 616-8460
                Email: Daniel.Riess@usdoj.gov
                *Attorneys for Defendant*

<b><u>CERTIFICATE OF SERVICE</u></b>

   I hereby certify that on March 30, 2012, I caused the foregoing document to be served via electronic case filing.

                  /s/ Daniel Riess
                 Daniel Riess