# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RON PETERSON FIREARMS, LLC,

        Plaintiff,

v.

B. TODD JONES, ACTING DIRECTOR,
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS & EXPLOSIVES,

        Defendant.

CIVIL NO. 11-CV-678 JC/LFG
(consolidated with 12-CV-167)

## DECLARATION OF CHARLES J. HOUSER

I, Charles J. Houser, do declare and state as follows pursuant to 28 U.S.C. § 1746:

1. I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Chief of ATF's National Tracing Center ("NTC") Division. I respectfully submit this declaration in support of Defendant's opposition to Plaintiff's motion to supplement the administrative record.

2. NTC compiles the trace database for ATF.

3. "Tracing" a firearm is the systematic tracking of the history of a firearm involved in a criminal investigation from the manufacturer or importer through wholesalers to the retail federal firearms licensee ("FFL") and ultimately to a retail purchaser. An FFL is a manufacturer, importer, distributor, or retailer licensed by ATF under the Gun Control Act ("GCA") to engage in a firearms business. A firearms trace begins when the NTC receives a request from a federal, state, local, foreign, or international law enforcement agency. In order to enable NTC to conduct a trace for a firearm, the requesting agency must provide to NTC the firearm description, which

is the name of the manufacturer, importer if applicable, the model, serial number, and the type and caliber of the firearm.

4. After receiving this information, NTC personnel typically contact the manufacturer or importer and provide it with the firearm description. The manufacturer or importer is then asked to determine when and to whom it sold the firearm, typically a wholesaler FFL.

5. NTC personnel then contact the wholesaler to determine based on records required under the GCA when and to whom the wholesaler sold the firearm, generally to a retailer. The process continues as long as records allow and is complete when a retail purchaser can be identified because, at that point, the paper trail of records required to be kept by FFLs under the GCA ends.

6. Upon completion of a trace request, NTC forwards the results directly to the requesting law enforcement agency. NTC also maintains the results in its own database, including the identity of the FFLs who sold the firearm that was traced. This information is subject to certain disclosure restrictions pursuant to what is known as the "Tiahrt Amendment," Pub. L. No. 112-55, 125 Stat. 552, 609-610 (Nov. 18, 2011).

7. Each of ATF's trace requests is conducted as part of a criminal investigation. The trace information that ATF provides to the requesting agencies is used by those agencies in furtherance of their criminal investigations.

8. In addition, ATF's special agents routinely use information from the trace database to develop investigative leads to: (1) link a suspect to a firearm-related criminal investigation; (2) identify any potential firearms traffickers; and (3) detect patterns in the sources and kinds of firearms that are used in crime. By doing so, the special agents are furthering

ATF's strategic goal of interdicting and preventing illegal firearms trafficking. At any point in time, ATF uses the leads to assist in investigating illegal firearms trafficking for task force investigations in dozens of cases.

9. In my experience, many FFLs are protective of the privacy of their business records and of the personal information of their customers. Publicly disclosing the identities of FFLs who sold firearms that were traced may be misunderstood by some as indicating that those FFLs violated the law or otherwise acted improperly by selling the firearm in question, which is not necessarily the case.

10. In addition, premature disclosure of specific firearms trace information could jeopardize a criminal investigation.

I declare under penalty of perjury that the foregoing is true and corrected. Executed this 26 day of March, 2012.

Charles J. Houser